# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAQUANNA SHEGOG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 7436 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL[1], Acting ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Cheryl Finney's ("Plaintiff") claims for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum in support of reversing or remanding the Commissioner's decision, which this Court will construe as a motion for summary judgment [Doc. No. 12] is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is denied.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. Procedural History

Plaintiff filed her applications for SSI on March 15, 2013 alleging disability beginning August 31, 2007 due coronary artery disease, diabetic retinopathy, hypertension, juvenile diabetes, domestic abuse, paresthesia, high cholesterol, depression, glaucoma, blepharitis, headaches, and amenorrhea. (R. 205–210, 238.) The claim was initially denied on July 5, 2013 and upon reconsideration on January 15, 2014. (R. 91, 107.) After filing a written request for a hearing, Plaintiff appeared on June 25, 2014 before an Administrative Law Judge ("ALJ") who rescheduled the hearing so Plaintiff could obtain counsel. (R. 71–77.) A second hearing was held before the same ALJ on November 19, 2014, where Plaintiff once again appeared unrepresented. (R. 52–70.) A vocational expert, Pamela Tucker, was also present at the hearing and testified. (*Id.*) On March 23, 2015, the ALJ denied Plaintiff's claim for SSI, finding her not disabled under the Social Security Act. (R. 34–51.) The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (R. 1–7.)

## II. ALJ Decision

On March 23, 2015, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 34–51.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 15, 2013, her

application date. (R. 39.) At step two, the ALJ found that Plaintiff suffered from severe impairments of diabetes mellitus with peripheral neuropathy and possible glaucoma, coronary artery disease, hypertension and hyperlipidemia. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 40.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[2] At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work. (R. 44.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as advertising material distributer, cleaner/housekeeper, and routing clerk. (R. 44–45.) Because of this determination, the ALJ found that Plaintiff is not disabled under the Act. (*Id.*)

---

[2] At this stage, the ALJ determined Plaintiff could perform light work involving:
> [N]o more than frequent bilateral handling, fingering and feeling and no more than occasional ramp and stair climbing, balancing, stooping, kneeling, crouching, bending, twisting and crawling; in a work environment exclusive of: ladder, rope and/or scaffold climbing requirements; and should avoid concentrated exposure to temperature extremes and work hazards such as unprotected heights and dangerous moving machinery.

(R. 41.)

3

# DISCUSSION

## III.   ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

5

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**V.    Analysis**

Plaintiff alleges that the ALJ's decision should be remanded because the ALJ: (1) failed to properly advise her of her right to counsel and to develop the record; (2) failed to classify Plaintiff's depression a severe impairment; (3) did not support her RFC determination with substantial evidence; and (4) erred at step five. Plaintiff also contends that the Appeals Council failed to consider Plaintiff's new and material evidence.

**A. The ALJ's RFC Determination**

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir.

6

2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). In determining an individual's RFC, the ALJ must consider all of her limitations which arise from medically determinable impairments, even those that are not severe. SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

Plaintiff specifically alleges that the ALJ erred when she discounted the opinion of Plaintiff's long-term treater, Ellen Barton, an advanced practice nurse ("APN"). Defendants claim no error occurred because Ms. Barton is not an "acceptable medical source" under the regulations.

Under the regulations, only an "acceptable medical source" can establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1527. But, health care providers, such as nurse practitioners are still considered "medical sources" whose opinions may be used to "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *See* SSR 06-3p. The regulations provide that ALJ's should "apply the same criteria listed in 20 C.F.R. § 404.1527 for evaluating medical opinions from acceptable medical sources to the opinions of "other medical sources". *See Philips v Astrue*, 413 Fed. Appx. 878, 884 (7th Cir. 2010). These factors include "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue*, 647 F.3d 734 (quoting *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)). "In deciding how to weigh the opinions of 'other sources,' including

7

[APNs], ALJs have broader discretion than they do with the opinions of physicians." *Fieldhouse v. Colvin*, 2016 WL 3027830 (N.D. Ill. May 27, 2016). This does not, however, allow the ALJ to summarily dismiss their findings. *See SSR* 06-3p ("the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").

Here, the only explanation the ALJ offered for according no decisional weight to Ms. Barton's opinion was that it was "not supported by treating notes and [was] not from a recognized acceptable medical source." (R. 44.) While the articulation standard is lower for "other medical sources" than "acceptable medical sources", this alone is not enough to support the ALJ's determination. An ALJ must weigh every medical opinion, regardless of its source, and is not permitted to summarily dismiss an opinion simply because it did not come from an "acceptable medical source." 20 C.F.R. § 404.1527(c) ("[r]egardless of its source, we will evaluate every medical opinion we receive"). Thus, the ALJ's sole reason for discounting Ms. Barton's opinion is that her treatment notes "do not show any functional limitations." (R. 44.) This determination ignores several of the evaluating factors, including Plaintiff's treating relationship with Ms. Barton, her routine visits, and whether Ms. Barton's opinion is supported by other evidence of record. Because the ALJ did not minimally

articulate her consideration of even some of these factors, the Court is unable to trace a path of reasoning between the evidence and her conclusions.

The ALJ's determination with respect to Ms. Barton's opinion is critical in this case because it may have an effect on the outcome. In her medical evaluation, Ms. Barton opined that Plaintiff's capacity: (1) to bend, stand, and stoop would be reduced more than 50%; (2) to climb, push, or pull would be reduced 20–50%; and (3) for fine manipulation, gross manipulation, and bilateral finger dexterity would be reduced 20–50%.[3] (R. 390.) Moreover, Ms. Barton found Plaintiff had a reduced ability to perform activities of daily living, could not lift for than ten pounds at one time, and had moderate limitation in social functioning and concentration, persistence, and pace. (*Id.*) At the hearing, the vocational expert testified that no jobs would be available for a hypothetical individual with Plaintiff's same age, education, work history, and the RFC limitations articulated by Ms. Barton. (R. 67–68.) Accordingly, the Court must remand. To be clear, the Court is not making a determination as to whether the ALJ on remand will accord different weight to Ms. Barton's opinion, however, remand is required here so that the ALJ can fully articulate her reasoning.

**B. Plaintiff's remaining arguments**

As for Plaintiff's remaining arguments, the Court expresses no opinion but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those

---

[3] Plaintiff's brief mistakenly states that the Ms. Barton opined that Plaintiff could stand throughout an eight hour day. (Pl.'s Br. at 12.)

conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [Doc. No. 12] is granted in part and the Commissioner's cross-motion [Doc. No. 17] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                **ENTERED:**

*Maria Valdez*

**DATE:    April 20, 2018**          _____
                                     **HON. MARIA VALDEZ**
                                     **United States Magistrate Judge**